UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:17-cv-01403-DOC-KESxDate: November 13, 2018

Title: COR SECURITIES HOLDINGS, INC., et al. v. BANC OF CALIFORNIA, N.A., et al.

PRESENT:

THE HONORABLE KAREN E. SCOTT, U.S. MAGISTRATE JUDGE

| Jazmin Dorado | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |
| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANT: |
| None | None |

**PROCEEDINGS (IN CHAMBERS):**Order DENYING Motion to Compel Compliance with Subpoena (Dkt. 76)

On November 2, 2018, Plaintiffs COR Securities Holdings, Inc. and COR Clearing LLC ("Plaintiffs") filed a motion in the form of a joint stipulation to compel Morrison & Foerster ("MoFo"), counsel for Defendant Banc of California, N.A. ("Banc"), to comply with a subpoena to produce documents. (Dkt. 76 [notice of motion] and Dkt. 76-1 [Joint Stipulation or "JS"].)

For the reasons stated below, the Court denies Plaintiffs' motion and the hearing noticed for December 11, 2018 is taken off calendar.

**I.BACKGROUND.**

**A.Summary of the Claims.**

The instant litigation involves claims and counterclaims between Plaintiffs, Banc, and Banc officer Hugh Boyle. The claims dispute ownership of and access to certain electronic files saved in workspaces hosted by OneHub, a third-party cloud-based storage provider. According to Plaintiffs, the OneHub account was created by Steven Sugarman, the managing member of COR Advisors, LLC who later became Banc's CEO. The disputed access to the OneHub files occurred after Mr. Sugarman separated from Banc. (See Dkt. 1 [complaint]; Dkt. 50 [amended answer and counterclaims].)

Plaintiffs contend that Banc improperly gained access to Plaintiffs' files in the OneHub workspaces by having its counsel at MoFo, Mark R. McDonald, send OneHub a letter falsely

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:17-cv-01403-DOC-KESx                                             Date: November 13, 2018
                                                                                                                                              Page 2

claiming that Banc was the sole owner of the entire OneHub account. (JS at 6.)[1] OneHub relied on the letter, granting Banc officer Olivia Lindsay access to documents stored in the account, including data that Plaintiffs contend was privileged, proprietary, and/or confidential. (Id.; see also Dkt. 43 at 6.) After Plaintiffs confronted Banc about the breach, Mr. McDonald allegedly informed Plaintiffs and OneHub that "any material that was downloaded and then determined not to be a Banc document was destroyed, with no copies retained." (Dkt. 43 at 6.)

      B. **The Motion to Disqualify.**

Early in this lawsuit, Plaintiffs moved to disqualify Mr. McDonald and MoFo from representing Banc. (Dkt. 22.) The District Judge, the Honorable David O. Carter, held a hearing on the motion on February 23, 2018. (Dkt. 38 [minutes] and Dkt. 43 [transcript].) As Judge Carter explained, Plaintiffs moved to disqualify Mr. McDonald under the "witness advocate rule" and to disqualify both Mr. McDonald and MoFo because MoFo attorneys "likely have reviewed and/or have in their possession plaintiffs' privileged and confidential information [from the OneHub account]." (Dkt. 43 at 8.)

In opposing the motion, Mr. McDonald filed a sworn declaration stating, "Neither I nor anyone at [MoFo] has reviewed any material on OneHub, nor have we reviewed any materials regarding Plaintiffs downloaded from OneHub by [Banc]. I have told Plaintiffs' counsel that on numerous occasions." (Dkt. 29-6 at 2.)

Judge Carter denied the motion to disqualify MoFo, finding it "speculation" that any MoFo attorneys had reviewed Plaintiffs' confidential information from OneHub. (Dkt. 43 at 8.) At the hearing, the following exchange occurred:

> THE COURT: As far as disqualifying the entire law firm, absolutely not.
>
> MR. DEUTSCH [Plaintiffs' counsel]: May -- Your Honor, may I ask that with respect to that last ruling that we have permission to renew that motion if during discovery it turns out --
>
> THE COURT: Oh, sure. Obviously, if you found out information was transferred and there was a tactical advantage, I wouldn't preclude that.

(Id. at 16.) This Court interprets this exchange to mean that if Plaintiffs learned during the course of discovery that Banc had shared Plaintiffs' confidential documents from the OneHub account with Mr. McDonald or other attorneys at MoFo, then Plaintiffs could renew the motion to disqualify MoFo. (See id. at 17 ["But your firm should be involved unless there was a

---

[1] All page citations refer to the pagination imposed by the Court's electronic filing system, CM/ECF.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:17-cv-01403-DOC-KESx                  Date: November 13, 2018
                                                                                                                                  Page 3

transference of [Plaintiffs' confidential] information. … I take your representation at your word [that no such transference occurred]."])

Judge Carter expressed concern, however, that Mr. McDonald would be called as a witness to testify about drafting the letter to OneHub and his representation that Banc destroyed all downloaded materials. (Id. at 8-9.) Plaintiffs' counsel confirmed that he intended to call Mr. McDonald as a witness at trial. (Id. at 14.) Judge Carter granted the motion to disqualify Mr. McDonald based on the witness advocate rule. (Id. at 18 ["I'm going to disqualify the gentleman. I'm going to keep the law firm on this record."]; see also Dkt. 38 [order disqualifying Mr. McDonald "because he is a necessary witness in this matter"].)

In discussing this ruling, the following exchange occurred:

MR. DEUTSCH [Plaintiffs' counsel]: Your Honor, given that we will be calling Mr. McDonald as a witness in this matter and given that you will be disqualifying him, may I ask as well that in your order, the minute order that you send out, you instruct [MoFo] since they're not being disqualified, to segregate --

THE COURT: I can do that. But once I do that -- remember, I'm trying not to cause embarrassment. [MoFo] can't be that dumb. And let me say it this way: If they did something like that, you're going to find it out during your discovery process. And that's a whole different matter. That whole firm then is in a different position. But if you want, I can simply say, which is standard, that "you're not to disclose." But, Counsel, if it happened, guess what? It already happened.

MR. DEUTSCH: That's – that's –

THE COURT: So your choice if you want me to send that out. I just don't want to be –

MR. DEUTSCH: I will accept Mr. McDowell's representation if he were prepared to give that representation.[2]

THE COURT: Sure. I'd appreciate it. It's a kind way to treat both you, quite frankly. I have great faith in my attorneys when they make a representation, and I'd prefer to leave it on that basis. Now, if you discover something else, you're free to ask those questions at a deposition. That doesn't have a chilling effect.

---

[2] MoFo attorney David McDowell (not to be confused with Mark McDonald) represented Banc at the hearing on the motion to disqualify.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:17-cv-01403-DOC-KESx            Date: November 13, 2018
                                                                                                                                                                                        Page 4

> And then you're free to come back. But I tend to go back to the days when we could all just shake hands in this county and your word was your bond. Okay?
>
> MR. DEUTSCH: That's fine with me, Your Honor.

(Dkt. 43 at 18-19.)

Plaintiffs later served a subpoena on MoFo seeking discovery concerning MoFo's alleged prior receipt of Plaintiffs' confidential information. (JS at 22.) That subpoena is not the subject of the present discovery dispute.

### C. The Notice of Related Case.

On June 29, 2018, various Defendants filed a notice of related case arguing that the instant action is related to a lower-numbered case in front of Judge Guilford, no. SACV-17-00118-AG-DFMx (the "Securities Fraud Action") and should therefore be transferred to him. (Dkt. 64.) Plaintiffs opposed the transfer. (Dkt. 67.) On July 9, 2018, Judge Guilford declined to accept the transfer of this case, finding it was insufficiently related. (Dkt. 70.)

Mr. McDonald represents Banc in the Securities Fraud Action. In opposing the transfer, Plaintiffs filed a declaration by attorney Manuel Abascal, counsel for Mr. Sugarman in the Securities Fraud Action. Mr. Abascal describes receiving in error an email from Mr. McDonald concerning the notice of related case, as follows:

> On June 28, 2018, I received an email from Mark McDonald that I recall stated "COR Capital" or "COR Clearing" or something to that effect in the subject line. I previewed the email and saw that the first sentence made reference to having previously discussed a potential notice of related case filing. I had never had such discussion with Mr. McDonald and therefore look to see to whom the email was addressed. I observe that the email was addressed to Banc of California individuals. I then suspected the email was not intended for me so I did not read it. I then observed the Mr. McDonald had sent me another follow-up email stating that the first email was not intended for me. … I then deleted the first email from my inbox and deleted item's folder and informed Mr. McDonald that I had done so.

(Dkt. 68-1 at 4 ¶ 9.)

The second (and currently disputed) subpoena to MoFo was served immediately following this filing, in July 2018. (JS at 7; Dkt. 76-2 at 3 ¶ 2.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:17-cv-01403-DOC-KESx            Date: November 13, 2018
                                                                                                                           Page 5

### D. The Disputed Subpoena.

The disputed subpoena seeks documents responsive to five categories. (Dkt. 76-2 at 8.) Four categories ask for all communications between Mr. McDonald, on the one hand, and Banc or other Defendants or defense counsel, on the other hand, concerning this lawsuit and dated on or after February 23, 2018 (i.e., the date Judge Carter disqualified Mr. McDonald) to the present. (Id. at 17.) The fifth category asks for all of Mr. McDonald's billing records and timekeeping records concerning work in connection with this lawsuit on and after February 23, 2018 to the present. (Id.)

MoFo responded to the subpoena by objecting to all five categories on relevancy and privilege grounds. (Id. at 19, 23-24.) During subsequent efforts to meet and confer, MoFo also argued that the subpoena was improper because it was based on matters inadvertently disclosed to Mr. Abascal, as follows:

> Plaintiffs' entire motion [to compel] is based on an attorney client privileged communication that was inadvertently sent to Manny Abascal, counsel for Plaintiffs' principal. Mr. Abascal immediately recognized the e-mail was not intended for him and represented that he would destroy it. … Instead, Mr. Abascal informed Plaintiffs' counsel about the e-mail for use in this litigation. … By using the inadvertent email both Mr. Abascal and Mr. Deutsch have violated their ethical obligations. See Cal. Eth. Op. 2013-188 ("Attorney may not read, disseminate, or otherwise use the [inadvertent] communication or its contents absent court approval or consent of its owner.") MoFo asked Plaintiffs' counsel to withdraw this motion and any reference to the email inadvertently sent to Mr. Abascal, but Plaintiffs' counsel refused.

(JS at 19 n.1.)

### E. The Instant Motion to Compel.

Via the instant motion, Plaintiffs seek an order compelling MoFo to serve an amended written response to the subpoena stating whether responsive documents exist and a privilege log identifying all responsive documents withheld based on privilege. Alternatively, Plaintiffs seek an order finding that MoFo waived the attorney-client communication privilege by failing to produce a privilege log and ordering MoFo to produce all response documents. (JS at 7-8.) Plaintiffs also request an award of fees incurred to bring the motion. (Id. at 8.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:17-cv-01403-DOC-KESx                Date: November 13, 2018
                                                                                                                                      Page 6

**II.     DISCUSSION.**

        **A.     <u>Relevance of the Documents Sought.</u>**

       Plaintiffs argue that the subpoena seeks relevant documents, as follows:

> The Subpoena seeks materials directly bearing on the role and actions of Mr. McDonald in this case, in particular documents and communications pertaining to his continued participation in this matter after he was disqualified as counsel. … Mr. McDonald was the author and sender of the false and misleading letter to OneHub that tricked OneHub into granting Defendants access to workspaces containing Plaintiffs' privileged, proprietary, and confidential data and information. Mr. McDonald is a necessary witness and was intimately involved in the factual allegations in this matter. Plaintiffs thus sought, and were granted, Mr. McDonald's disqualification and his sequestration from further involvement from this action. …
>
> Mr. McDonald, however, despite Judge Carter's order and admonitions, appears to have continued his involvement in this case, at a minimum involving himself with Defendants' Notice of Related Case. (<u>See</u> ECF # 68-1 at ¶ 9 and Page ID #606 (Abascal Declaration and exhibit)). ***The Subpoena is targeted to discover the full extent of Mr. McDonald's continued involvement.*** … That is an issue which Judge Carter has already indicated would be relevant for discovery, should Mr. McDonald be ill-advised enough to continue his involvement.

(JS at 26-27) (emphasis added). Thus, Plaintiff's relevancy argument consists of (1) explaining what the subpoena seeks to discover rather than explaining why that information is relevant under Federal Rule of Civil Procedure 26(b)(1), and (2) an argument that Judge Carter already ruled that such discovery is permissible.

       Regarding Judge Carter's prior ruling, Plaintiffs interprets it as requiring "that Mr. McDonald was to be shielded from any participation in this matter." (JS at 6.) There are several problems with this interpretation. First, based on the above-quoted hearing transcript, Plaintiffs' counsel proposed – but Judge Carter never ordered – that MoFo "segregate" Mr. McDonald from all work on this lawsuit.

       Second, the basis of Judge Carter's disqualification was the witness advocate rule, and the purpose of that rule is to prevent juror confusion when a lawyer appears us both a witness and an advocate. See <u>Horton v. Sierra Conservation Ctr., California Dep't of Corr. & Rehab.</u>, No. 09-01441, 2012 WL 13035388, at *1 (E.D. Cal. Mar. 15, 2012) (noting that the relevant California Rule of Professional Conduct "is intended to apply only to situations in which the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:17-cv-01403-DOC-KESx　　　　　　　　　　　　　　　　　　Date: November 13, 2018
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Page 7

member knows or ought to know that he will be called as a witness before a jury" because an "advocate who becomes a witness is in the unseemly and ineffective position of arguing his own credibility"). It would not serve the purpose of the witness advocate rule to bar Mr. McDonald from all work on this lawsuit, particularly given the fact that he still represents Banc in the Securities Fraud Case. This Court does not interpret Judge Carter's disqualification ruling so broadly.

　　　　Notably, Mr. McDonald's disqualification was ***not*** based on a finding that Mr. McDonald had received Plaintiffs' confidential information. Judge Carter expressly declined to make such a finding, instead explaining that he credited the contrary representation in Mr. McDonald's declaration.

　　　　Even if Mr. McDonald had been disqualified from all work in connection with this lawsuit (which this Court does not find), Mr. Abascal's declaration is not evidence that Mr. McDonald was performing work in connection with this lawsuit. If he talked to Banc and other lawyers at MoFo about filing a notice of related case in both cases, he could have done so while representing Banc in the Securities Fraud Case.

　　　　Regarding Judge Carter's statement about future discovery, the most likely interpretation of those remarks is that Plaintiffs would be permitted to inquire about the potential dissemination of confidential information from the OneHub account (which they already did via the first subpoena directed at MoFo). This interpretation is consistent with Judge Carter's comments that (1) the results of such discovery could lead to a renewed motion to disqualify the entire MoFo firm, and (2) if such disclosure had happened, it would have already happened in the past.

　　　　For these reasons, Plaintiffs have failed to carry their burden of demonstrating why the subpoena they issued to MoFo seeks relevant information. Since MoFo's relevancy objection to every document category was well taken, MoFo was not required to serve a privilege log or explain whether responsive documents existed.

　　　　**B.　　Award of Fees and Expenses.**

　　　　When a motion to compel is denied, the Court must order "the movant, the attorney filing the motion, or both to pay the party … who opposed the motion its reasonable expenses in opposing the motion, including attorney's fees" unless "the motion was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(B).

　　　　An award of expenses in favor of MoFo is inappropriate in the present case. Plaintiffs' position in bringing the instant motion was substantially justified, given the unusual factual context in which this dispute arose and the inconclusive discussion of these issues at the hearing before Judge Carter on February 23rd.

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Initials of Deputy Clerk JD